# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JACITA ANITRA YARBOROUGH**, <br><br> Plaintiff, <br><br> v. <br><br> **NANCY A. BERRYHILL**, <br> Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 3:16-cv-856-SB <br><br> **OPINION AND ORDER** |

**Michael H. Simon, District Judge.**

United States Magistrate Judge Stacie F. Beckerman issued Findings and Recommendation ("F&R") in this case on August 31, 2017. ECF 23. Judge Beckerman recommended that the finding of the Commissioner of Social Security ("Commissioner") that Plaintiff is not disabled be affirmed.

Under the Federal Magistrates Act ("Act"), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party files objections to a magistrate's findings and recommendations, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

PAGE 1 – OPINION AND ORDER

For those portions of a magistrate's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (holding that the court must review de novo magistrate's findings and recommendations if objection is made, "but not otherwise"). Although in the absence of objections no review is required, the Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Fed. R. Civ. P. 72(b) recommend that "[w]hen no timely objection is filed," the Court review the magistrate's recommendations for "clear error on the face of the record."

Plaintiff timely filed an objection (ECF 25), to which Defendant responded. ECF 26. The Court has reviewed *de novo* this portion of the F&R, Plaintiff's objections, Defendant's response, the underlying briefing before Judge Beckerman, and the relevant portions of the administrative record ("AR"). For the reasons discussed below, the F&R is adopted in part.

## DISCUSSION

### A. Moderate Limitations in Concentration, Persistence, and Pace

The Court does not adopt the portion of the F&R relating to the RFC limitation to "unskilled work." Plaintiff argues that the unskilled work limitation is insufficient to describe Plaintiff's difficulties with maintaining concentration, persistence, and pace. The argument is well taken.

The RFC limits Plaintiff to "unskilled work" without any further specific limitation regarding concentration, persistence, or pace. An ALJ's summarized assessment may "adequately capture[ ] restrictions related to concentration, persistence, or pace where the

assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). *Stubbs-Danielson* is inapplicable, however, when medical evidence establishes that a plaintiff has limitations in concentration, persistence, or pace. *See Brink v. Comm'r Soc. Sec. Admin.*, 343 F. App'x 211, 212 (9th Cir. 2009) ("The medical testimony in *Stubbs-Danielson*, however, did not establish any limitations in concentration, persistence, or pace. Here, in contrast, the medical evidence establishes, as the ALJ accepted, that Brink does have difficulties with concentration, persistence, or pace. *Stubbs-Danielson*, therefore, is inapposite.")).

In *Stubbs-Danielson*, the ALJ did not err in determining that the plaintiff could perform "simple tasks," notwithstanding some evidence that the plaintiff had deficiencies with regard to pace, because the medical evidence showed that the plaintiff had "a slow pace, both in thinking & actions" but "retained the ability to 'carry out simple tasks'." *Id.* at 1173. This Court previously has found that a limitation of "unskilled work" without more is insufficient to incorporate difficulties in concentration, persistence, and pace. *Oberg v. Colvin*, 2014 WL 3695609 at *13 (D. Or. July 24, 2014); *see also Lubin v. Comm'r Soc. Sec. Admin.*, 507 F. App'x 709, 712 (9th Cir. 2013) ("Although the ALJ found that Lubin suffered moderate difficulties in maintaining concentration, persistence, or pace, the ALJ erred by not including this limitation in the residual functional capacity determination[.]"); *Doty v. Astrue*, 2014 WL 1269479, at *3 (D. Or. Mar. 26, 2014) ("Unskilled work, by itself, does not adequately capture plaintiff's 'moderate limitation' with regard to concentration, persistence and pace."); *Juarez v. Colvin*, 2014 WL 1155408, at *7 (C.D. Cal. Mar. 20, 2014) (finding that because the ALJ expressly found moderate limitations in concentration, persistence, and pace, "the ALJ's RFC determination

should have included not only the limitation to unskilled work, but also a moderate limitation in maintaining concentration, persistence, and pace").

Here, the ALJ concluded at step two that Plaintiff had moderate difficulties with regard to concentration, persistence, and pace. The RFC, however, only limited Plaintiff to performing unskilled work, with no mention of her specific limitations with regard to concentration, persistence, and pace. Therefore, the ALJ failed adequately to incorporate Plaintiff's mental limitations into the RFC. This was error.

**B. Leg Elevation Limitation**

The Court also declines to adopt the portion of the F&R regarding the ALJ's failure to incorporate Plaintiff's leg elevation limitation into the RFC. Plaintiff argues that the ALJ erred in not incorporating the medical opinion of Dr. Neil Roundy that Plaintiff needed to take frequent breaks throughout the day to elevate her legs. ECF 17. The Commissioner responds that the RFC adequately incorporates Dr. Roundy's opinion. ECF 18. For the reasons explained below, the Court agrees with Plaintiff.

The RFC represents the most that an individual can do despite her impairments. Social Security Ruling ("SSR") 96-8p, *available at* 1996 WL 374184, at *4. SSR 96-8p states that "[t]he RFC assessment must be based on *all* of the relevant evidence in the case record, such as . . . [m]edical history, [m]edical signs and laboratory findings, . . . [and m]edical source statements." *Id.* at *5.[1] To reject an uncontradicted opinion from an examining physician, the ALJ must provide clear and convincing reasons that are supported by substantial evidence. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). An ALJ errs by ignoring an

---

[1] SSRs are binding on the Social Security Administration, but they do not have the force of law and are not binding on courts. *See Holohan v. Massanari*, 246 F.3d 1199, 1202 n.1 (9th Cir. 2001). They are, however, entitled to some deference because they represent the Commissioner's interpretation of the agency's regulations. *Id.*

examining physician's medical opinion without providing reasons for doing so; an ALJ effectively rejects a medical opinion by ignoring it. *Gamble v. Colvin*, 2014 WL 4419570, at *3 (D. Or. Sep. 8, 2014) (citing *Smolen v. Chater*, 80 F.3d 1273, 128 (9th Cir. 1996).

Here, Dr. Roundy examined Plaintiff on October 2, 2012, and wrote a report. *See generally* AR 865-69. In the section of the report titled "FUNCTIONAL ASSESSMENT/MEDICAL SOURCE STATEMENT," Dr. Roundy concluded that, due to Plaintiff's chronic deep vein thrombosis ("DVT") in her left leg, she required "frequent breaks throughout the day for raising her leg or using compression devices." AR 868. Dr. Roundy's opinion is also in accord with the discharge instructions given to Plaintiff after four hospitalizations for DVT and swelling in her leg. After all four of these hospitalizations, Plaintiff was instructed to elevate her legs to alleviate swelling. AR 750, 1038, 1063, 1088.

In formulating the RFC, however, the ALJ only noted that "every 30 minutes to an hour [Plaintiff] needs the opportunity to change positions with no change in the work process." AR 15. In the narrative description of the RFC formulation, the ALJ gave "great weight" to Dr. Roundy's opinion "because it is consistent with his examination findings and the record as a whole that shows the claimant needs the opportunity to change positions from sitting, standing, and walking in order to alleviate leg pain stemming from recurrent DVTs." AR 23. The ALJ gave no explanation, however, for the RFC's failure to incorporate Dr. Roundy's opinion that Plaintiff needed frequent breaks to elevate her legs.[2] Changing positions does not encompass a need to elevate one's legs, and the qualification that Plaintiff have "no change in the work process" directly contradicts Dr. Roundy's opinion that Plaintiff needs frequent breaks. The ALJ

---

[2] As the Commissioner points out, the ALJ did acknowledge that Plaintiff was "slightly more limited than Dr. Roundy assessed, in terms of postural activities." AR 23. That acknowledgement, however, makes no mention of Plaintiff's need for frequent breaks or leg elevation and, therefore, does not resolve the issue.

erred by failing to incorporate Dr. Roundy's opinion into the RFC or, alternatively, failing to provide legally sufficient reasons for rejecting the opinion.

The ALJ's error regarding Dr. Roundy's opinion was not harmless. An error is harmless when it is nonprejudicial or inconsequential to the non-disability decision. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054-55 (9th Cir. 2006). Here, had the RFC incorporated Plaintiff's need for frequent breaks to elevate her legs, the disability determination could have been significantly affected. Testimony by the vocation expert ("VE") underscores this error's prejudicial effect. During the August 19, 2014, hearing, the following discussion ensued between the VE, the ALJ, and Plaintiff's attorney ("Atty"):

> Atty: . . . [I]f a person needed to take extra breaks outside of the normal breaks, totaling an hour a day, how would [that] affect their ability to retain competitive employment?
>
> VE: They would not be able to retain competitive employment under those terms.
>
> Atty: And are there any jobs that would allow a person to elevate their legs throughout the day?
>
> VE: Not above waist level. I mean—well, this is what I should say. I think this is the best vocationally relevant way to answer that question. Production is really important, not only in all jobs, but especially in these kinds of jobs and if you are elevating your legs above the waist level, outside of normal breaks, then you are not as productive as you need to be.
>
> Atty: Okay. What's the—
>
> ALJ: At waist level.
>
> VE: Above waist level.
>
> ALJ: I said at waist level they could maintain these jobs.
>
> VE: You know, that really depends on how a person does it. Some workers will have a stool and they put their—the bottoms of their feet on the stool and their knees are, you know, level with their waist. At that level, yes, but if again, if they are—I think the fairest way to answer that, your honor, is that it was production

> based and whether they can maintain at least the 80th percentile of production compared to the normal good average worker for that position as deemed appropriate by that employer for that job.
>
> ALJ: And some workers can't?
>
> VE: I don't know. I can't tell you for sure, but as a vocational expert I think all I can say is that is the vocationally relevant factor.
>
> ALJ: Well, a question is, If there is a restriction that they—well, seated the person was—must be allowed to raise her—one of her legs at level, horizontally, not above waist level, waist level. Would those jobs still be available?
>
> VE: I think the way that I described it with a stool, yes. I think that the person, that would be a normal reasonable assumption that a person still could be at the competitive level. If it is different than that, like extending the, you know, the leg straight out at waist level, that may interfere with production. But there are special stools that are available and often workers will just purchase a smaller stool and bring that to work if they need to lift their legs.

AR 50-52.

As the VE explained, whether Plaintiff can maintain the necessary level of production to retain competitive employment depends upon whether Plaintiff needs to elevate her legs at or above waist level, whether her leg needs to be extended horizontally, or whether her leg can be bent at the knee with her foot on a stool. The record is unclear as to exactly how Plaintiff needs to elevate her leg, including such issues as how high and straight versus bent.

Additionally, the frequency with which Plaintiff needs to take breaks to elevate her leg similarly affects the disability determination. As the VE testified, Plaintiff would be unable to retain competitive employment only if she required breaks outside of the normal breaks, totaling an hour a day. The frequency and manner in which Plaintiff needs to elevate her legs, therefore, affects the disability determination. Unfortunately, the record is ambiguous as to how frequently Plaintiff needs to take breaks. Dr. Roundy stated: "Maximum standing and walking capacity: At least two hours but less than six hours. Specific number of hours: Four. This is due to her

PAGE 7 – OPINION AND ORDER

requirement for frequent breaks throughout the day for raising her leg or using compression devices." AR 868. Dr. Roundy's opinion, though unclear, appears to indicate that Plaintiff needs approximately two hours in a day to elevate her legs or use compression devices, since her maximum standing and walking capacity is six hours, but specifically four hours due to her need for breaks. It is not clear whether those two hours need to be separated such that a normal lunch hour could not be included as one of those two hours. Therefore, the record provides no meaningful way to evaluate whether Plaintiff can retain competitive employment, given her limitations.

C.  Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Id.* at 1100. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

As discussed above, the ALJ erred by not incorporating Plaintiff's specific mental limitations into the RFC. The ALJ further erred by failing to either incorporate Dr. Roundy's opinion that Plaintiff needed frequent breaks to elevate her legs or use a compression device into

PAGE 8 – OPINION AND ORDER

the RFC or provide a legally sufficient reason for rejecting that opinion. The Court finds that the record contains ambiguities that need to be developed further. Specifically, the frequency and manner in which Plaintiff needs to elevate her leg—whether at waist height or above waist height, with bent knee or horizontally—needs to be determined. Additionally, whether Plaintiff can maintain employment when her limitations in concentration, persistence, and pace are incorporated into her RFC needs to be evaluated. Therefore, the Court finds that additional proceedings are necessary, and remand for an award of benefits is not appropriate.

## CONCLUSION

The Findings and Recommendation (ECF 23) is ADOPTED IN PART, as discussed in this Opinion and Order. The Court REVERSES the Commissioner's decision that Plaintiff is not disabled and REMANDS for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED.**

DATED this 24th day of October, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge